ANDREW BROWN, Appellant, *v.* CHARLES FOSTER et al., Respondents.

108   387
115   325
115   327
115   552
108   387
140   205
108   387
160   347

Defendants contracted to manufacture, sell and deliver to plaintiff, and put up in running order at a place specified, certain machinery for a steam saw-mill. Machinery answering the description named was delivered and set up, but, as found by the referee, " did not as a whole work properly, and did not meet the requirements of the contract." Plaintiff rejected the machinery as unsatisfactory, but upon his request defendants gave him permission to use it for the purposes of his business until defendants' manager reached the place. The manager came and made some alterations in the machinery, and plaintiff thereafter, although finding fault with the machinery, continued to use it in his business for nearly three months and until the close of the season's business, and then took it down and stored it with notice to defendants. In an action to recover damages for breach of contract *held*, the facts justified a finding that the use of the machinery after the visit of the manager was, in law, an acceptance of the same, and plaintiff thereupon became liable for the contract price; also, that the vendee had no right to have the use, after complaint made, treated as a trespass instead of an acceptance.

*It seems* that, in such case, while the vendee is entitled to a reasonable time for examination, long enough to put the machinery in motion and see it operate, if he seeks to reject it as not in accordance with the contract of sale, he must do nothing, after discovering its true condition, inconsistent with the vendor's ownership.

The intent of the vendee in using the property after discovery of defects, may be gathered from his acts as well as his words, and a statement of a refusal to accept does not, as matter of law, show non-acceptance or prevent the acts from being taken as substantial proof of an acceptance, not for examination, but for use.

(Argued January 18, 1888 ; decided February 28, 1888.)

Appeal from judgment of the Court of Common Pleas in and for the city and county of New York, entered upon an order made November 12, 1885, which affirmed a judgment in favor of defendants entered on the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*Joseph H. Choate* for appellant. The question of plaintiff's acceptance is one of law and is reviewable by this court. (*Ruiz* v. *Renauld*, 100 N. Y. 259; *White's Bank, etc.,* v. *Myles*, 73 id. 341; *Underhill* v. *Vandervoort*, 56 id. 247; *Burr* v. *Am. S. S. Butt. Co.,* 81 id. 175, 180; *Healey* v. *Utley*, 1 Cow. 345; *Shepherd* v. *Pressey*, 32 N. H. 49, 56.) An acceptance must be by some unequivocal act done on the part of the buyer with the intent to take possession of the goods as owner. (*Renick* v. *Sandford*, 120 Mass. 309, 316; Benjamin on Sales, § 173; *Lillywhite* v. *Devereux*, 15 M. & W. 285; *Taylor* v. *Wakefield*, 6 El. & Bl. 765.; *Shindler* v. *Houston*, 1 N. Y. 269; *Stone* v. *Browning*, 51 id. 211; *Cooke* v. *Millard*, 65 id. 367–374; *Prescott* v. *Locke*, 51 N. H. 94, 100, 101.)

*George C. Lay* for respondents. The referee having found acceptance of the machinery as a fact, this court will not review the facts and disturb the finding. (*Leonard* v. *N. Y. & Tel. Co.,* 41 N. Y. 541; *Stevens* v. *Mayor, etc.,* 84 id. 307.) The plaintiff having accepted the machinery, with full knowledge of all its defects, is bound to pay the purchase-price. (*Reed* v. *Randall*, 29 N. Y. 358; Benjamin on Sales, § 699.) In the absence of fraud or express warranty, a claim for damages does not survive the acceptance of articles manufactured under an executory contract after a full opportunity to inspect and examine them. (*Reed* v. *Randall*, 29 N. Y. 358; *Beck* v. *Sheldon*, 48 id. 365; *Gaylord Mf'g Co.* v. *Allen*, 53 id. 515; *Parks* v. *Morris Ax & Tool Co.,* 54 id. 586; *Norton* v. *Dreyfuss*, 106 id. 90; *Rust* v. *Eckler*, 41 id. 488; *Dutchess Co.* v. *Harding*, 49 id. 321.) The party who suffers

from a breach of contract must so act as to make his damages as small as he reasonably can. He must not, by inattention, want of care, or inexcusable negligence, permit his damages to grow and then charge it all to the other party. (*Hamilton v. McPherson,* 28 N. Y. 72.)

Danforth, J. This action is for damages in not delivering to the plaintiff at Olive Hill, Kentucky, an engine, boiler and saw-mill, with the necessary appliances theretofore contracted to be supplied, set up and put in running order by the defendants. The defendants answered, alleging a due performance of the contract on their part, an acceptance of the machine by the plaintiff after inspection, trial and examination, and sought to recover by way of counter-claims: *First,* the price of the boiler, engine, etc.; and, *second,* the price of other goods, wares, etc., sold by them to the plaintiff. The questions upon this appeal are raised upon the plaintiff's case. Upon the facts found by the referee the action was clearly maintainable unless the performance tendered by the defendants was in fact accepted in lieu of that actually stipulated for. The referee finds that the articles described in the complaint were, in professed compliance with the contract, delivered to the plaintiff in June, 1883, but that "they did not as a whole work properly and did not meet the requirements of the contract." From that time there was fault finding on the part of the plaintiff and complaint, at one time that the mill "is wrongly constructed from one end to the other," and at another time that it "is such a grand failure that it will never answer our purpose." But on the twenty-fifth of June, after in substance rejecting the mill as unsatisfactory, the plaintiff writes to the defendants, "will you permit me to use your mill for cutting 200,000 to 300,000 feet of small oak and maple, and beech logs, or shall I hire a portable mill at your expense to do this work," and the defendants at once replied, " use the mill; will have everything in order soon." Complaints however continued, and on the 21st of July, 1883, the plaintiff said, "I cannot accept the mill, nor

can I wait longer for you to supply one," adding, "for the present will avail myself of your telegraphic permission to use your mill for sawing scantling, etc.," to which defendants' manager replied under date of July twenty-fifth, "use mill until I get to Olive Hill." He went there about September first, made some alteration in parts of the machinery and returned home. The plaintiff continued to use the mill from that time until the latter part of November, 1883. The referee finds as a fact, "that on or about the first day of September, the plaintiff accepted the articles in question," and in his conclusions of law, declares, "that the use of the engine, boiler and saw-mill by the plaintiff after the 1st day of September, 1883, was in law an acceptance of the same, and that thereby the plaintiff became liable for the contract price therefor."

It is obvious that prior to the first of September, or the visit of the defendants' manager to the plaintiff's works, there had been such a positive and unqualified rejection of the machinery as not conforming to the contract as would have required the defendants to retake it, or incur liability for the risk and expense of storage, had that been insisted upon. The articles were up to that time their property. The use of the machinery was by their consent, and not in the exercise of any right acquired by the plaintiff, as owner. That consent, however, expired with the visit of the manager to the plaintiff's works and his alteration of the machinery, and that time may be regarded as the period of attempted performance on the defendants' part. The plaintiff then became subject to the general rule that one who seeks to reject an article as not in accordance with the contract, must do nothing after he discovers its true condition, inconsistent with the vendor's ownership of the property. He would, in such a case as the present, be entitled to a reasonable time for examination; long enough to put the machinery in motion and see it operate, and he might for that purpose do with it whatever was necessary, and if, after such examination, without dealing with it in any other way or for any other purpose, he rejected it, acceptance

could not be implied.   The evidence in this case, however, permits an inference that the plaintiff exercised a dominion over the machinery inconsistent with ownership in the defendants, and consistent only with title as well as possession in himself.   He used the machinery in the prosecution of his business, and although complaining did not intermit its use. Knowing its defects he continued to run it.   His intent in so doing may be gathered from his acts as well as from his words, and it cannot be said as matter of law those acts do not afford substantial proof of an acceptance, not for the purpose of examination, but for use.   The complaints continued to October tenth, but so did his use of the machine, and later until November twenty-sixth, when the work on hand having been completed and the season over, the machinery was uprooted and stored with notice to the defendants.   If these things had been done at the moment of discovery that the machinery was not in compliance with the contract, the obligation of the plaintiff would have been discharged.   At the time when they were done the right of rescission had been lost.   The continued use of the machine in the promotion of his own business interests, with knowledge of its imperfections, was an unequivocal act of acceptance which no words of his own could qualify. (*Reed* v. *Randall*, 29 N. Y. 358; *Beck* v. *Sheldon*, 48 id. 365; *Dutchess Co.* v. *Harding*, 49 id. 321.)

Nor can he, as is suggested, elect to have his use of the machine after complaint made, treated as a trespass.   He had received the consideration on which his promise to pay depended, and the obligation so incurred could be discharged only by performance.   If an omission of that duty gives occasion for an action, its nature cannot be determined at his choice.   He could not require the defendant to treat the use of the machine as a tort, and be satisfied with damages as for a conversion.   If in favor of either such right of election existed, it was because of the plaintiff's conduct and was cast upon the vendor, but he might very well refuse to regard as unlawful an act which came directly within the contract, and the accomplishment of which was on the vendee's part its sole

object. The vendee might for reasonable cause have rejected the machine, but not having done so, its possession was not in violation of the contract; nor was its use, even after a verbal refusal to accept, necessarily inconsistent with actual acceptance or tortious. Non-payment after performance by the vendor, was a breach of the vendee's agreement, and upon that the action was well brought. It is true the vendee said, "I will not accept," but this was of no consequence, when, after an opportunity to inspect, and with full knowledge of its quality, he still not only retained the machinery, but enjoyed the benefit of its use. That act was one of ownership and completed the transaction; and the transmutation of property from the vendor to the vendee was final. The contract then became the only measure of the defendant's right or the plaintiff's liability.

The cases cited by the learned counsel for the appellant have been examined. They require no other conclusion than that reached by the referee. The machinery was to be of a certain description, to be manufactured by the defendants, sold and delivered to the plaintiff at a place named, and put in running order. Machinery answering that general description was furnished at the place named, set up and put in running order. The question, however, remained whether it was such, or in such condition and of such character as the purchaser was bound to accept, or whether anything remained to be done for the purpose of putting it into that state. That condition, or if it did not exist, the performance of those things, was a condition precedent to the vesting of the property. Until then the machinery was not in a deliverable state. It might not be ascertained upon inspection; it could be ascertained upon trial. Upon trial, as we have seen, defects at once appeared, but the consent of the defendants excused the plaintiff from at once rejecting the machinery. But supposed improvements were made, or at least adjustments. Another trial was had. Then it was the duty of the vendee to act promptly. The cases cited by the appellant show this, and also that the

vendee may be charged with acceptance of the articles if his conduct is consistent with ownership under a contract, " as for instance if he sells or attempts to sell goods, or if he disposes absolutely of the whole or any part of them or attempts to do so, or alters the nature of the property or the like." (*Lillywhite* v. *Devereux*, 15 M. & W. 285.) An application after trial of the machinery to the use of the vendee in the regular conduct of his business, is as significant as a sale to others, and such an act is as unequivocal. Whether profit is sought by that use or by a sale can make no difference. The effect of the sale would not depend upon the price obtained, nor the effect of the "use" upon the efficiency of the machinery. In either the object is the same, the advantage of the vendee through instruments obtained by contract from the vendor, and such act expresses an unmistakable assent that the machinery is in a deliverable state and that it does conform to the contract. It is an election to take the benefit of the contract, although its execution by the vendor was different or inferior to that expected. This result was one which might be fairly reached under the evidence and circumstances of the case; and the findings of the referee that "the plaintiff used said engine, boiler and saw-mill after the 1st day of September, 1883, with full knowledge of all defects of construction or operation thereof, and after full opportunity to inspect and test the said machinery," and "without the authority, license or permission of the defendants, and solely on the account and for the benefit of the plaintiff," fully justify his conclusion that there was in law an acceptance of the machinery by the plaintiff and consequent obligation to pay for it pursuant to the contract. His complaint was therefore properly dismissed and the defendants given judgment upon the counter-claim.

The judgment appealed from should be affirmed.

All concur.

Judgment affirmed.