# MINOT GROCERY COMPANY, a Corporation v. FLATHEAD PRODUCE COMPANY, a Corporation.

(153 N. W. 284.)

**Consignment of goods — sight draft for price — inspection of goods — opportunity to make — acceptance — findings.**

1. Appellant consigned from Montana a carload of apples to respondent at Minot, which shipment was accompanied with a sight draft for the selling price. Respondent could not properly inspect such apples while in the car, and before it was permitted to unload the apples it was required to pay the sight draft, which it paid. When the fruit was unloaded respondent discovered, for the first time, that a large portion thereof was damaged, whereupon it wired appellant that it declined to accept the shipment, offering, however, to handle it on appellant's account. Appellant replied by mail, accepting such offer and instructing respondent to keep track of lot numbers and names on boxes and make full report. Such acceptance did not reach respondent for several days after the date of its telegram, and owing to the bad condition of the apples, and in order to minimize the loss, respondent proceeded to sell the same to the trade, which it did to the best advantage, sustaining a loss, however, of $255.51, to recover which respondent sues.

*Held*, that the evidence is sufficient to sustain the findings of the trial court in plaintiff's favor.

Sight draft — paying for — title transferred — right to rescind — upon full discovery of condition.

2. *Held*, further, that while the acts of paying the sight draft and unloading the shipment operated to transfer title of the apples to respondent, it had the right, upon discovering their damaged condition, to rescind its purchase by acting promptly as it did in sending the message.

Parties — subsequent contract — evidence sufficient to establish.

3. Evidence examined and *held* sufficient to establish a subsequent contract between the parties, whereby plaintiff was to act for defendant and on its account in the sale of such apples, and in the light of the uncontroverted facts plaintiff's failure to furnish a detailed report as requested is excusable, and will not operate to defeat a recovery.

Opinion filed May 18, 1915.

Appeal from District Court, Ward county, *K. E. Leighton,* J.

Action by Minot Grocery Company against the Flathead Produce Company. From a judgment in plaintiff's favor, defendant appeals. Affirmed.

*Cowan & Adamson* and *H. S. Blood,* for appellant.

The receipt of goods, will become an acceptance of them if, after their receipt, the buyer does not act with reference to them which he would not have any right to do if he were not the owner of them. Rock Island Plow Co. v. Meredith, 107 Iowa, 498, 78 N. W. 233; Brown v. Foster, 108 N. Y. 387, 15 N. E. 608; Van Winkle v. Crowell, 146 U. S. 42, 36 L. ed. 880, 13 Sup. Ct. Rep. 18.

*Bosard & Twiford,* for respondent.

A finding by the court that each and all of the allegations of the complaint are true is sufficient as an adoption of such allegations by the court as its findings. Brynjolfson v. Thingvalla Twp. 8 N. D. 106, 77 N. W. 284.

Fisk, Ch. J. On or about September 3d, 1911, defendant and appellant, a foreign corporation engaged in selling fruit in carload lots on commission, consigned to the plaintiff company at Minot a carload of apples, and accompanying the shipping bill there was a bill of lading with slight draft attached providing that the consignee should have the right to inspect the shipment without the common carrier surrendering the bill of lading. When the shipment arrived in Minot.

on September 6th, plaintiff inspected the car as well as it could, but it was unable to make a thorough inspection of certain of the apples which were contained in boxes, until after the car was entirely unloaded. In order to unload the car plaintiff was compelled to and did pay for the shipment, after which it removed the apples from the car to its warehouse, when it discovered that certain portions of the shipment, consisting of what is designated Transparent apples, were in bad condition, being over ripe when picked, and soft, spotted, and junkey. Thereupon the plaintiff wired defendant as follows: "Car is not satisfactory by any means. All our dealings with you led us to believe that we would receive good stock at these prices. Must have protection. Will handle car on your account. Answer quick."

In response to this, defendant left with the telegraph company at Kalispell a telegram, and mailed a carbon copy thereof to the plaintiff, reading as follows: "Take up draft on car. Draw on us for loss of stock. Keep track lot numbers and names on boxes. Make us full report. Expect fair dealing from you. Assure you the same in return." Defendant instructed the telegraph company to withhold sending such message until further orders, but plaintiff received through the mail the carbon copy on September 9th, being three days after the apples had been paid for and unloaded. In the meantime plaintiff had sold and consigned a portion of the shipment to the trade, and thereafter sold and disposed of the entire shipment, sustaining a loss of $255.51, which amount, with interest, it seeks to recover from the defendant.

The trial in the court below resulted in a judgment in plaintiff's favor for the full amount prayed for, and defendant has appealed therefrom, alleging three grounds for a reversal; the third and only ground argued in the brief and which we need notice is that the court erred in ordering judgment in plaintiff's favor.

As we understand appellant's contention, and the position taken in its brief is, that the plaintiff accepted the shipment after acquiring knowledge of the defective quality of the apples, by making sales thereof as aforesaid, and that it is precluded thereby from setting up the defective quality of the goods, and that under the testimony it has no cause of action. In other words, it contends that plaintiff must be treated as a purchaser of this consignment of apples, and not as a consignee to handle and dispose of the same on commission as defend-

ant's agent. This contention is no doubt predicated upon the theory that the rights of the parties became fixed on September 6th, when the plaintiff took up the bill of lading from the common carrier and unloaded and sold or consigned a portion of the shipment, that being prior to the receipt by plaintiff of defendant's carbon copy of the telegram aforesaid which was mailed at Kalispell on September 6th.

It is no doubt the law, as contended by appellant's counsel, that ordinarily the receipt of goods will operate as an acceptance of them if the vendee, after their receipt, does any act with reference to the goods which he would not have any right to do if he were not the owner of them. In other words, the exercise of acts of ownership therein is sufficient to establish an acceptance. Benjamin, Sales, 6th ed. § 703; Rock Island Plow Co. v. Meredith, 107 Iowa, 498, 78 N. W. 233.

In Brown v. Foster, 108 N. Y. 387, 15 N. E. 608, the court no doubt announces a correct rule in holding that where one seeks to reject an article as not in accordance with the contract of sale, he must do nothing, after discovering its true condition, inconsistent with the vendor's ownership of the property. See also Van Winkle v. Crowell, 146 U. S. 42, 36 L. ed. 880, 13 Sup. Ct. Rep. 18.

Counsel for appellant are no doubt correct in their statement that, owing to the election made by plaintiff's counsel at the trial to stand on the first cause of action alleged in the complaint, viz., that the plaintiff did not purchase the apples, but received the same for sale on commission, plaintiff's recovery must stand or fall upon the sufficiency of the proof to sustain such theory of recovery.

Appellant's counsel strenuously insist that the recovery cannot be sustained upon the theory of a commission contract, because defendant's instructions to plaintiff in its telegram to keep track of the lot numbers and names on boxes, and make full report, were not complied with. But plaintiff's testimony is to the effect that such instructions could not be carried out for the reason that it had, prior to receiving the same, disposed of the apples which were defective.

In the light of these facts we are called upon to adjudicate the respective rights of these parties.

The testimony of the defendant discloses that it had knowledge that some of the apples were in poor condition at the time of the shipment.

In a letter written by defendant to plaintiff on October 10th, it, among other things, states: "There were 307 boxes of apples in this car which we would very much have preferred not to have shipped you, had there been any more stock available at that time. As the matter stands with us to-day, we have only one carload of early apples to get out of the valley, and this year some of them were not as good as they should have been, and we advised the growers of the fact when we accepted their goods for shipment, and we have since advised them of the trouble you had with the apples in this car, and they seemed disposed to accept a reasonable settlement on their goods. We are holding up payment to them until such time as we have agreed with you on a reasonable basis of settlement. Outside of these 307 boxes of apples, we feel that the car left here in first-class condition. . . . Of course, by putting in these 307 boxes of apples we ran our chances of having the whole car turned down, which was our first impression after receiving your wire, and when we wrote the message wording it as we did. We still insist that the matter is up to you, and if you will advise us what allowance you expect us to make on these 307 boxes of apples, and it is within reason at all, we will mail you a check for that amount promptly." The testimony also discloses that it afterwards mailed to the plaintiff a check for $76.75 as a refund by reason of damaged apples. This was, we think, a recognition and admission on defendant's part of its liability on the theory that the transaction was a commission deal.

There is no evidence that plaintiff knew that the defendant was merely acting as a commission broker in shipping these apples to it; nor is there any evidence that plaintiff sold and disposed of any of such fruit prior to sending its telegram to the defendant aforesaid, or before defendant had mailed the carbon copy of its reply message. The proof discloses that plaintiff furnished a report to the defendant on all the Transparent apples, which were all in poor condition. It would therefore seem that defendant was in a position to protect itself from loss for it certainly must have known, or at least should have known, from whom it received the damaged apples, and the fact that plaintiff did not keep track of the lot numbers and names of growers pursuant to instructions, which came too late, ought not to preclude a recovery. Had the defendant wired its answer to plaintiff's message

instead of sending it by mail, the situation would have been different. The plaintiff did what a reasonably prudent person would do under like circumstances, and the undisputed testimony discloses that it handled the consignment in the best possible way and with as little loss as possible. The situation called for prompt action as each hour's delay meant greater loss.

The depositing in the postoffice of defendant's reply to plaintiff's telegram was an acceptance of plaintiff's offer therein to handle the car on commission (9 Cyc. 295), and the testimony discloses that it did everything within its power to discharge its duty and prevent as much loss as possible in view of the damaged condition of the shipment.

We are agreed that the judgment of the District Court was correct and the same is accordingly affirmed.